May the pleas of the court. My name is Mike Romano. I represent Mr. Brown, the petitioner and appellant. There were five issues where there were certificates of appealability granted. I'd like to focus on the shackling issue and the joinder issue. I'm going to talk about the shackling issue first, then the joinder if I have a minute, and save any remaining time. So moving to the shackling issue, I'd like to address the prejudice question first. And by prejudice, I mean the inherent prejudice that the Supreme Court referred to in the DEC opinion rather than the circuit split on the Brecht question, whether or not Brecht or Chapman applies, although I'm happy to discuss that too. So with regard to whether or not my client was prejudiced by having to wear shackles at his trial, the State Court of Appeal ruled that he was not prejudiced for two reasons. First, he's not prejudiced because his attorney requested an instruction to the jury to ignore the shackles, and that he cannot now complain of the jury being aware of shackles because his own attorney brought the attention to the jury. And second, he's not prejudiced because he never tried to raise his hand or take the stand, therefore drawing attention to the shackles. And I think that that is not only unreasonable, but directly contrary to DEC, which says that the prejudice is inherent if the jury is not there visible. The extent of their visibility isn't important. It's the question in DEC is whether or not the jury was aware of it. So on that particular question, I think the state court is absolutely unreasonable and contrary to DEC. The question about whether or not shackling was justified in the first place is also addressed in DEC. And that, in DEC, the court says there has to be indisputably good reasons to justify the shackles. Now, both DEC and this court's opinion in Spain, which Judge Hall wrote, are really about the extent of the shackling. And the question here is whether or not an arm, basically a handcuff, my client should be handcuffed with a chain so that he could write, whether or not that that was an appropriate level of restraint. And my reading of DEC, and DEC is a very, the relevant part of DEC is short and I think very broad, it's only a page or two, is that there has to be indisputably good reasons justifying the shackling. And in my opinion, there has to be indisputably good reasons that my client wear a handcuff, which the court has repeatedly said is inherently prejudicial. There was no evidence ever presented to the state court that my client has ever hurt anyone in his entire life. There was, the shackling hearing was conducted. What was he in prison for? A drug offense. The shackling hearing took place 15 months prior to his trial. The most recent evidence that he'd ever engaged in any battery was over a year prior to that hearing. So we're talking about evidence that is, and this is, the state court of appeal acknowledges that this is the state of the evidence. This evidence is the evidence that used to justify the shackling of my client. And I say cannot, does not constitute indisputably concrete reason to justify the shackling. In Spain, which is this court's opinion, remember the defendant was on trial for escaping from prison and murdering prison guards. And yet this court found that the extent of his shackling was inappropriate because the court did not try to find the least restrictive means possible. And I submit that the same error occurred here. I'll move on to the Joinder issue, unless this Court has questions. My sense is that the shackles were, to the extent possible, concealed from the jury. They were, Your Honor. And my sense is that, and I may be wrong, but I think it's in the record, that the normal process was followed. That is to say, when the jury comes in, he's already seated. So they're not watching him clanking into the room. That's true, Your Honor. I believe, though, that the ruling in deck is whether or not the jury is aware that he is shackled, not the extent to which they have seen. Sort of brought home to them. Yeah, exactly. The question is whether or not the jury believes that the judge believes that this guy is dangerous, right? Not the extent to which they've seen the shackles. It's the telegraphing. I'm having, the hard part with your argument for me is that we have indisputable evidence that, well, I shouldn't say it this way. We have a very clear charge, and it's ended up proving. And I think the district judge, excuse me, the state trial judge at the time of making the shackling decision is entitled to think that it's likely enough true to justify what he's going to do. We have some guy in jail who is a chronic non-cooperator in an almost irrational way. And he's in Pelican Bay. You don't get to Pelican Bay just because you're a drug dealer. You get to Pelican Bay because you are a bad behavior, bad behavior. We have a sort of a ranking system within the jail in terms of how bad he is and why he's kind of off the charts. If the state moves in front of the trial judge for some shackling to confine him so we don't end up having a dangerous or disruptive situation in the courtroom, I have trouble second guessing the judge on that. I appreciate that, Your Honor. I have a couple of responses. First of all, I submit that the hearing here was too far away in time from the actual trial and that the evidence that was undisputed at the time, that the evidence of his most recent physically disruptive behavior was a year prior to that hearing. So we're talking about a two-year span in and of itself is extremely problematic and does not constitute undisputably good evidence for justifying shackling. The second response is that in DEC, the client had just been convicted of capital murder. And so the issue was whether or not he should be shackled for the penalty phase of his capital case. So he was a real danger to society. My client has never been charged or convicted of any crime of violence against a person in prison, out of prison, in his entire life. Johnny Spain, which is a case that Judge Hall wrote, he was not only in prison for murder, but he was being tried for escape and killing prison guards on his way out. And yet this court still held that his federal due process rights were violated by using restraints. But in that case, I have not reread Spain for quite a while. I think that was Judge Henderson's case, was that right? And on the trial level? I don't recall. I think so. But it wasn't one of those cases where his shackles are hidden from the jury. I mean, there was a fairly clear and dramatic demonstration. It was a very long trial, and that was certainly part of the issue in Spain. But again, the question in Spain and in DEC, because in DEC, remember also, the defendant was shackled during the guilt phase of his trial. It was only that they extended the shackles for the penalty phase. The court still found that that was a due process violation. So it's the extent of the shackles. I can't complain that my client should have not been shackled at all, because in fact, the trial attorney did not object to him being shackled to the chair and constrained to the chair. The issue is whether or not he should have also had the chain. And the Supreme Court in DEC made clear that the question isn't how much the shackles are exposed to the jury. It's whether or not they're aware of the shackles. Because the problem is that shackles send a message from the judge to the jury that this guy is danger. So that's my position on that. I'd like to take just a quick moment to get to the Joinder issue. In particular, I want to talk about the standard of review, because I'm afraid that it wasn't adequately briefed in my reply brief. The State Court of Appeals said that the two counts charged against my client could be tried together because the evidence was overlapping. I submit that that is directly contrary to the district attorney, the prosecutor's own take on his own evidence prior to trial. There's no way to square those two decisions whatsoever. And in that way, it's an unreasonable review of the record by the state court. And therefore, our case falls under 2254 D2. And I don't have to go through the unreasonable application clearly established law hurdles of AEDPA. Follow? I'd like to reserve the rest of my time. Let's hear from the state, and you've saved some time. Excuse me? Let's hear from the state, and you have saved some time. Thank you. May it please the court. Peggy Ruffray, Deputy Attorney General for Respondent Appellee. It's our position that the state court's decision in this case was not an unreasonable application of DEC. In fact, it was a routine application and well within those broad guidelines. There was a full-blown hearing in this case on whether the defendant should be shackled. Sergeant Thomas testified based on the defendant's C file that he had had 22 serious rules violations in the three years since he'd been incarcerated on the drug charge. The highest security classification in the California prisons is reached when you amass 53 points. This defendant had amassed 264 points. And that was for rules violations, including batteries on staff, willfully delaying an officer, refusing orders, threats, gassing, destruction of state property, arson, and possession of inmate alcohol. And as the court pointed out, and as was reiterated at the hearing, only the most dangerous inmates are sent to Pelican Bay in the first place. So it was on that basis that the court determined that shackling was appropriate, including the extended chain with a handcuff on the defendant's hand. And Sergeant Thomas very specifically tied those rules violations to what was required in the courtroom in this case. This is at ER 254. I think it's important for the court to understand, I noticed a pattern of Mr. Brown acting out when he didn't get his way is basically what it boils down to. Many of those 115s he received were simply for not following directions, which is exactly what my custody staff are going to be giving Mr. Brown coming and going from this courtroom. If he doesn't get his way, he acts out in a willfully defiant manner. And that's basically what his records show. And that was the basis for the trial court determining that these shackles and this particular extent of the shackles were appropriate. That's absolutely a reasonable application of DEC. How much does the danger, how high does the danger have to be, or does it have to be a danger of a particular severe outcome in order to justify shackling? Or is it enough that there's a very high danger of disruption? Not hurting anybody, but just disruption. Because from the look of it, what he does when he's in prison is disruptive. Yes, assault and so on, but it doesn't sound as though he's trying to knife people. The assault we're getting, at least so far as I'm getting them described in the stuff I have in front of me, is he's kind of tussling with the officers. He's struggling with the officers. He's not trying to kill them. So my question to you is, is it enough to justify shackling when the judge is concerned about disruptions in the courtroom rather than being concerned about physical danger, danger of very serious physical injury? Yes. And there is nothing in DEC that suggests that the shackling is justified only when there is some previous incidence of violence. A trial court is certainly entitled to take measures to make sure that his courtroom is not disrupted. And the quote that I just read, that was concerned about. And when he's being transported in and out, as they're giving him directions, if he's not going to follow it and is going to be defiant and possibly even violent in the way that Your Honor has suggested, not knifing, of course, but in this very disruptive manner, the trial court's entitled to say, this is a court of law, and we're not going to have that here. We're going to take these preemptive steps. And nothing in DEC limited the basis for shackling to some kind of demonstrative act of violence. So I think any other decision would allow the courtroom to become quite chaotic. Let me also say that even if you find that there was a due process violation, which I don't think you can under the deferential standard that is required, there was certainly no prejudice in this case. And we know that for a fact, because he was charged with two crimes, and the jury did not convict on one of the crimes. That, I'm afraid, doesn't prove it at all. Well, I think it does, because the purpose that the Supreme Court stated in DEC, the reason why the court does not want visible shackling absent a good reason is because the jury may think, this person is so violent that I should just convict him without considering the evidence. The danger is that it could overcome the presumption of innocence. And that's specifically stated in DEC. That is the purpose for preventing shackling. I understand all of that. But what I'm disagreeing with you is, you say that there was no prejudice because they acquitted him on one charge. Well, they convicted him on another one. Yeah, but the fact that they didn't simply convict on everything, I think, demonstrates. Without the shackling, there's at least a plausible argument, I'm not sure it's a strong or convincing argument, that they would have acquitted him on both. How do you know? Well, there was very strong evidence on the second charge, which is what the state court stated as well. There was very strong evidence. Now, there's also no evidence that the jurors actually saw the restraints in this case. The record. I guess they didn't need to because they were told what they were told. Well, that was only because the defendant's attorney made the specific choice to do that. The trial court gave him the option. But of course, that was a constrained choice. The only reason he did that was that he very strongly suspected, feared, that the jury would see it. There's no other way, there's no reason he's going to do it, except for the fact that his client is shackled. He thinks the jury is going to see it. And he wants the jury to at least have an explanation. He thought that was a possibility. But that instruction said, disregard this altogether. You're not to. Listen to the bell. I just rang. Well, juries are presumed to follow their instructions, even when they might. Even the judge does. I mean, the judge is quite smart on this one. He says to the defense lawyer, listen, you may or may not want the instruction, because the instruction may just call attention to it. On the other hand, you may want the instruction. And he chooses the instruction. The trial judge knows exactly what's going on here. And OK, the defense lawyer chooses the instruction. But he's kind of between a rock and a hard spot, produced by the decision to shackle. But my point is that when we're going to the question of prejudice, that can't be attributed to the state. That has to be on the defense. And you can't say I was prejudiced because my attorney made the decision to instruct the jury on shackling. Scalia, I disagree on that point. He may win, but I disagree on that point. Well, the jurors also knew that the defendant was in prison because this was a prison crime case. So they already – it wasn't like a situation where a person is maybe even out of custody. But the judge did everything possible to minimize the – any possible prejudice from the shackling by the fact that it was obscured behind the counsel table. And he was brought in and out before the jurors were present. And as I say, there's – they may have had some brief glimpse of something on his hand. But that's really even speculation. Because it was a chain that was then – it went down under the table. And the defendant didn't testify. He never got up and moved around the courtroom. And if you look at the – Do we know anything about whether he wrote anything? The record is silent. But if you compare this case to the Ninth Circuit's case in Larson v. Palmateer, that was a case where the court did find a due process violation but found no prejudice. And that was a case where the defendant represented himself at trial and had a clearly visible leg shackles as he was moving around the courtroom for several days of his trial. So there was no question that the jury saw these extremely visible shackles. And the court, the Ninth Circuit, said that that was improper. But then they found that there was no prejudice based on the strength of the case and the instructions given and so forth. And when you compare this case, it's certainly not even comparable to that. I see my time is up. Okay. Thank you. Actually, it's not, but you don't need to stand there. Okay. Response? I'll be quick. First of all, yes, there was a number of rule violations by my client, but I have clients who get rule violations for getting seconds in line for meals. And that there were a number of rule violations in and of themselves, I don't think can justify shackling. He's never hurt anybody in his entire life. There's no evidence that he ever hurt anybody. The only question is whether he should have this shackle on his wrist. In Spain, which is admittedly a pre-Edput case, but this case goes, this court goes on to great length into saying that the trial court should use the least restrictive means possible. And particularly in the instance that you're talking about, Judge Fletcher, about somebody who's merely disruptive. There are contempt orders, there are other ways that they can, that judges can use to attempt at least to control criminal defendants. And that courts are under a due process obligation to find the least restrictive restraint. And that shackles should only be used as a last resort. That's repeated over and over again in Spain. And the last point about prejudice under Brecht. I actually think that the prejudice in this case is particularly acute because he's being charged with an in-prison offense, right? He's being charged with not listening to prison guards. And so the charge is particularly close to the reason that you would have shackling and the communication between the judge and the jury. And the question about whether or not there's strong evidence in this case. In a pre-trial hearing, the judge who heard the pre-trial hearing said that there was almost no crime ever committed in the count that he was actually committed in, convicted of. So I don't think, I disagree with the people's position that there was strong evidence in this count. I thank both of you for your helpful arguments. And Brown versus Horrell, which is now submitted for decision.
judges: Hall, Fletcher W. , Paez